**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Crecensiano Martinez-Medina, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 18-cv-8139** |
| | ) | |
| Siegwerk USA, Inc., a Delaware | ) | |
| Corporation, d/b/a Siegwerk Environmental | ) | **Illinois State Court Case No.:** |
| Inks; Siegwerk USA, Inc., a Delaware | ) | **2018 L 1205** |
| Corporation, d/b/a Siegwerk Chemicals; and | ) | |
| EMCO Chemical Distributor, Inc., an Illinois | ) | |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT

NOW COMES Plaintiff, CRECENSIANO MARTINEZ-MEDINA, by and through his attorneys, Weiss Ortiz, P.C., and for his Amended Complaint against Defendants, Siegwerk USA, Inc., a Delaware Corporation, d/b/a Siegwerk Environmental Inks; Siegwerk USA, Inc., a Delaware Corporation, d/b/a Siegwerk Chemicals; and EMCO Chemical Distributor, Inc., an Illinois Corporation, alleges as follows:

### COMMON ALLEGATIONS

1.      Plaintiff, CRECENSIANO MARTINEZ-MEDINA ("CHRIS"), is, and at all times relevant to this Amended Complaint a resident of the City of Berwyn in Cook County, Illinois.

2.      Defendant, EMCO Chemical Distributor, Inc. ("EMCO"), is an Illinois corporation with its principal place of business located at 8601 95th Street, Pleasant Prairie, Wisconsin 53158.

3.      Defendant, EMCO, is engaged in the business of custom packaging and distribution of industrial and specialty chemicals for use in a variety of products, including but not limited to paints, coatings, adhesives and sealants.

4.      As part of EMCO's custom packaging service, it specializes in the filling of liquids with a focus on flammable and corrosive products.

5.      As part of EMCO's distribution service, it maintains a transportation fleet consisting of approximately 31 tractor trailers and 29 tankers that provide delivery service throughout the continental United States.

6.      EMCO has distribution facilities located throughout the Midwest including but not limited to North Chicago, Illinois and Columbia, Illinois.

7.      EMCO blends, fills, packages and/or distributes methyl isoamyl ketone ("MIK"), methyl isobutyl ketone ("MIBK") and CAUSTIC SODA 50% UN 1824 ("CAUSTIC SODA").

8.      At all times relevant, Patrick Industries, Inc., d/b/a Gravure, Inc. ("PATRICK"), is an Illinois corporation engaged in the business of manufacturing wallpaper for mobile homes and recreational vehicles.

9.      PATRICK owns and operates the manufacturing and warehouse facility located at 1077 Sesame Street, Bensenville, Illinois ("Warehouse Facility"), containing four docks for shipping and receiving materials for use in the manufacture of wallpaper.

10.      PATRICK uses MIK and MIBK in its wallpaper manufacturing business.

11.      PATRICK purchases MIK and MIBK from EMCO on an as needed basis in 55-gallon drums.   MIK and MIBK do not cause injury to exposed skin.

12.      On or about November 15, 2016, EMCO loaded industrial and specialty chemicals including but not limited to MIK, MIBK and CAUSTIC SODA onto an EMCO tractor trailer for

distribution to PATRICK and other customers.  PATRICK does not use CAUSTIC SODA in its business.

13.     On or about November 15, 2016, EMCO transported industrial and specialty chemicals including but not limited to MIK, MIBK and CAUSTIC SODA via EMCO tractor trailer to its customers, including but not limited to PATRICK.

14.     At all times relevant, EMCO controlled the materials contained within its tractor trailer.

15.     From about 2007 to 2017, and at all times relevant, CHRIS was employed by PATRICK as a forklift operator at PATRICK'S Warehouse Facility.

16.     On November 15, 2016, at approximately 10:30 a.m., CHRIS operated a forklift at the PATRICK Warehouse Facility.

17.     On November 15, 2016, a tractor trailer bearing the EMCO logo arrived at the PATRICK Warehouse Facility and backed into a loading dock.

18.     Upon backing into the loading dock, the EMCO driver signaled CHRIS with his arm and hand to drive his forklift over to the EMCO truck, at the same time calling out to CHRIS that he had a delivery for PATRICK of "only about twenty drums."

19.     Per industry standard, PATRICK receives its shipment of MIK and MIBK in 55 gallon drums securely braced and fastened onto a pallet for transport.  One pallet holds four full drums.

20.      EMCO drivers are generally responsible for unloading materials from the EMCO trailer onto the PATRICK loading dock using a specialty electric pallet jack kept in the trailer of the EMCO truck.

21. On November 15, 2016, however, instead of unloading the delivery with the electric pallet jack, the EMCO driver removed the pallet jack from the back of the trailer and signaled to CHRIS to unload the pallets comprising the PATRICK delivery from the EMCO truck with his forklift.

22. Standing at first outside of the tractor trailer, the EMCO driver directed CHRIS to drive his forklift onto the EMCO tractor trailer and pointed out the first pallet that was part of the PATRICK delivery. This pallet was located at the back of the truck load.

23. Due to the height and width of the drums on the pallet, CHRIS was unable to see behind the pallet as he approached it with the forklift.

24. CHRIS then drove up against the first pallet with the forklift, and applying customary slow and continuous movement, he maneuvered the forklift so that the forks inserted into the openings of the pallet at its base, lifted the pallet containing drums of MIK and MIBK, the forks of the forklift extending through and securing the selected load. CHRIS then backed the forklift out of the EMCO trailer and placed the pallet onto the adjacent dock.

25. Still standing outside of the truck, the EMCO driver pointed out to CHRIS the second pallet comprising the PATRICK delivery. CHRIS unloaded the second pallet in the same manner as he had the first pallet.

26. The EMCO driver then stepped into the back of the trailer with CHRIS and positioned himself at the head of the third pallet comprising the PATRICK delivery, in a position opposite from where CHRIS approached with the forklift. In the same manner as for the first two pallets, CHRIS drove up against the third pallet with the forklift, securing and lifting the selected load. CHRIS then backed out of the EMCO truck and placed the third pallet onto the adjacent dock.

27. In like manner, with the EMCO driver positioned at the head of the pallet, in a position opposite from where CHRIS approached with the forklift, CHRIS unloaded the fourth pallet.

28. The EMCO driver then positioned himself at the head of the fifth pallet comprising the PATRICK delivery in a position opposite from where CHRIS approached with the forklift. While CHRIS' view was obstructed, the EMCO driver was in a position to see what was behind the fifth pallet.

29. In like manner as the previous four pallets, CHRIS drove up against the fifth pallet with the forklift. As CHRIS fitted the prongs of the forklift securely into and through the base of the fifth pallet, the prongs of the forklift punctured a drum that had been loaded on the floor of the trailer directly behind the fifth pallet.

30. The EMCO driver yelled, "You went through the drum! You just damaged the drum! Just back off, back off! Help me!"

31. CHRIS maneuvered the forklift so that it released the punctured drum and then backed out of the EMCO trailer and unloaded the fifth pallet onto the adjacent dock.

32. CHRIS hurried back into the truck on foot to assist the EMCO driver with the damaged drum as liquid poured from the puncture located several inches above its base.

33. With their hands on the drum, CHRIS and the EMCO driver turned the drum onto its other end to stop the escape of the liquid spilling out onto the floor of the trailer. As they turned the drum, the contents spilled down the sides of the drum.

34. CHRIS believed that the damaged drum he handled contained MIK or MIBK and that it posed no serious threat of harm to exposed skin.

35. After handling the punctured drum, CHRIS saw that it was labeled "CAUSTIC SODA 50% UN 1824".

36. At approximately 12:00 p.m., one hour after handling the damaged barrel, CHRIS began experiencing pain and a burning sensation on his left ankle and foot.

37. CHRIS reported the incident to PATRICK and was told that if he went to the hospital and reported being injured on the job, he would be fired.

38. CHRIS was directed by PATRICK to wash the affected area with water.

39. CHRIS was directed by PATRICK that if he should seek medical treatment, to report to any medical personnel that it was a household burn.

40. On November 15, 2016, CHRIS' shift ended at 3:00 p.m., however, due to the pain in his left foot and ankle, he went home at approximately 1:00 p.m.

41. At home, CHRIS inspected the affected area on his foot and saw that the CAUSTIC SODA had burned a hole through his sock and the skin on his left ankle and foot was red.

42. CHRIS washed the affected area on his left ankle and foot with water as directed by PATRICK. The pain escalated through the evening hours.

43. On the morning of November 16, 2016, CHRIS experienced excruciating pain in his left foot and ankle and observed that the injured area was brown.

44. On November 16, 2016, CHRIS sought medical treatment.

<div align="center">

**COUNT I – Negligence**
**Crecensiano Martinez-Medina v. EMCO Chemical Distributor, Inc.**

</div>

1-44. Plaintiff affirms, repeats and re-alleges paragraphs 1-44 of the Common Allegations of this Complaint as and for paragraphs 1 through 44 of this Count I as if once again fully set forth herein.

<div align="center">

6

</div>

45. Defendant, EMCO, had a duty of care to properly load drums containing industrial and specialty chemicals including but not limited to MIK, MIBK and CAUSTIC SODA onto the EMCO trailer truck for safe transport, unloading and handling.

46. Defendant, EMCO, breached its duty of care by committing one or more or all of the following careless and negligent acts or omissions:

    a. Failing to properly load pallets and/or drums containing industrial and specialty chemicals including but not limited to MIK, MIBK and CAUSTIC SODA onto its tractor trailer so said materials would not be susceptible to damage during transport, unloading and/or handling;

    b. Failing to unload industrial and specialty chemicals by use of its own employee and utilizing the electronic pallet jack provided him;

    c. Failing to ascertain that pallets and/or drums containing industrial and specialty chemicals including but not limited to MIK, MIBK and CAUSTIC SODA were properly loaded, placed, sequestered and/or braced on the tractor trailer to avoid damage and endangering others during transport, unloading and/or handling of materials;

    d. Failing to properly direct CHRIS in the unloading and/or handling of the PATRICK shipment via forklift;

    e. Failing to warn CHRIS that a drum of CAUSTIC SODA was directly behind and on the floor of the truck as he unloaded materials via forklift as instructed by the EMCO employee;

    f. Failing to warn CHRIS of the corrosive nature of such CAUSTIC SODA on said truck and its caustic nature should CHRIS be exposed to it;

    g. Failing to warn CHRIS in the proper unloading and/or handling of said CAUSTIC SODA drum;

    h. Failing to provide protections to CHRIS in the unloading and/or handling of CAUSTIC SODA and upon contact with such chemical.

47. As a direct and proximate result of one, more than one, or all of the foregoing negligent and careless acts or omissions on the part of Defendant, EMCO, Plaintiff CRECENSIANO MARTINEZ-MEDINA, has suffered severe and disfiguring injuries to his leg,

foot and other bodily areas;  has suffered mental and physical pain and anguish; Plaintiff has incurred and become liable for medical attention, care, treatment and services and will continue to incur future medical expenses for treatment of his injuries; and Plaintiff has been unable to perform his work and daily activities as he has in the past resulting in lost wages and/or benefits.

WHEREFORE, Plaintiff CRECENSIANO MARTINEZ-MEDINA, asks this Court to enter judgment in his favor and against Defendant EMCO Chemical Distributor, Inc., in an amount in excess of Seventy-Five Thousand and 00/100ths Dollars ($75,000.00), plus costs of this suit.

<div align="center">

**COUNT II – Negligence 430 ILCS 30/1 et seq.**
**Crecensiano Martinez-Medina v. EMCO Chemical Distributor, Inc.**

</div>

1-44. Plaintiff affirms, repeats and re-alleges paragraphs 1-44 of the Common Allegations of this Complaint as and for paragraphs 1 through 44 of this Count II as if once again fully set forth herein.

45.     Defendant EMCO, had a statutory obligation to properly load drums containing industrial and specialty chemicals including but not limited to MIK, MIBK and CAUSTIC SODA onto the EMCO tractor trailer for safe transport, unloading and handling as follows:

Pursuant to 430 ILCS 30/4(a):

> The Illinois Hazardous Materials Transportation Act adopts by reference all or any portion of the Federal Motor Carrier Safety Regulation and the hazardous materials regulations of the United States Department of Transportation, as now or hereafter amended.  430 ILCS 30/4(a).

Pursuant to 49 CFR 177.834:

> (a)*Packages secured in a motor vehicle.* Any package containing any hazardous material, not permanently attached to a motor vehicle, must be secured against shifting, including relative motion between packages, within the vehicle on which it is being transported, under conditions normally incident to transportation. Packages having valves or other fittings

<div align="center">8</div>

must be loaded in a manner to minimize the likelihood of damage during transportation. 49 CFR 177.834.

46. Under Federal Hazardous Materials Regulations, CAUSTIC SODA is defined as a hazardous material. 49 CFR 172.101.

47. Under Federal Hazardous Materials Regulations, the drum containing the CAUSTIC SODA is a package. 49 CFR 171.8.

48. Under Federal Hazardous Materials Regulations, the EMCO truck is a motor vehicle. 49 CFR 171.8.

49. The Illinois Hazardous Materials Transportation Act (430 ILCS 30/2) and Federal Hazardous Materials Regulations (49 U.S.C. 5101) are designed to protect the safety of human life and property.

50. The Illinois Hazardous Materials Transportation Act and Federal Hazardous Materials Regulations are intended to protect a class of persons to which Plaintiff belongs from the kind of injury he suffered.

51. Defendant, EMCO, breached its statutory obligation by committing one or more of the following careless and negligent acts or omissions:

   a. Failing to properly load pallets and/or drums containing industrial and specialty chemicals including but not limited to MIK, MIBK and CAUSTIC SODA onto its tractor trailer so said materials would not be susceptible to damage during transport, unloading and/or handling;

   b. Failing to unload industrial and specialty chemicals by use of its own employee and utilizing the electronic pallet jack provided him;

   c. Failing to ascertain that pallets and/or drums containing industrial and specialty chemicals including but not limited to MIK, MIBK and CAUSTIC SODA were properly loaded, placed, sequestered and/or braced on the tractor trailer to avoid

damage and endangering others during transport, unloading and/or handling of materials;

d. Failing to properly direct CHRIS in the unloading and/or handling of the PATRICK shipment via forklift;

e. Failing to warn CHRIS that a drum of CAUSTIC SODA was directly behind and on the floor of the truck as he unloaded materials via forklift;

f. Failing to warn CHRIS of the corrosive nature of such CAUSTIC SODA on said truck and its caustic nature should CHRIS be exposed to it;

g. Failing to warn CHRIS in the proper unloading and/or handling of said CAUSTIC SODA drum;

h. Failing to provide protections to CHRIS in the unloading and/or handling of CAUSTIC SODA and upon contact with such chemical.

52. As a direct and proximate result of one, more than one, or all of the foregoing negligent and careless acts or omissions on the part of Defendant, EMCO, Plaintiff CRECENSIANO MARTINEZ-MEDINA, has suffered severe and disfiguring injuries to his leg, foot and other bodily areas; has suffered mental and physical pain and anguish; Plaintiff has incurred and become liable for medical attention, care, treatment and services and will continue to incur future medical expenses for treatment of his injuries; and Plaintiff has been unable to perform his work and daily activities as he has in the past resulting in lost wages and/or benefits.

WHEREFORE, Plaintiff CRECENSIANO MARTINEZ-MEDINA, asks this Court to enter judgment in his favor and against Defendant EMCO Chemical Distributor, Inc., in an amount in excess of Seventy-Five Thousand and 00/100ths Dollars ($75,000.00), plus costs of this suit.

Dated: February 12, 2019

<div style="margin-left:50%">

Respectfully submitted,
Crecensiano Martinez-Medina


By: _____

Adeena Weiss Ortiz
Attorney for Plaintiff

</div>

Weiss Ortiz, P.C.
332 S. Michigan Ave., #1032
Chicago, IL 60604
Phone: (312) 553-4051
Fax: (312) 276-3040

info@weissortizlaw.com

11